# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF SOUTH CAROLINA
# AIKEN DIVISION

| | |
|---|---|
| Dustin Patrick, ) | Civil Action No.: 1:16-cv-03496-JMC |
| ) | |
| Plaintiff, ) | |
| v. ) | **ORDER AND OPINION** |
| ) | |
| City of Aiken and William R. Cue, ) | |
| ) | |
| Defendants. ) | |
| ) | |

Plaintiff Dustin Patrick filed this civil rights action against Defendants City of Aiken and William R. Cue (together "Defendants") pursuant to 42 U.S.C. § 1983 alleging that Cue used excessive force against Plaintiff in violation of his constitutional rights. (ECF No. 1-1 at 6 ¶ 21.) Plaintiff also asserts state law claims against City of Aiken for battery, assault, and negligence. (*Id.* at 5 ¶ 18–6 ¶ 20.)

This matter is before the court on Defendants' Motion for Summary Judgment (ECF No. 39) pursuant to Rule 56 of the Federal Rules of Civil Procedure. In accordance with 28 U.S.C. § 636(b) and Local Civil Rule 73.02(B)(2)(g) (D.S.C.), the matter was referred to the United States Magistrate Judge for pretrial handling. On March 29, 2019, the Magistrate Judge issued a Report and Recommendation in which she recommended that the court deny Defendants' Motion for Summary Judgment. (ECF No. 54 at 13.) Defendants filed Objections to the Magistrate Judge's Report and Recommendation, which are presently before the court. (ECF No. 56.) For the reasons set forth below, the court **REJECTS** the Magistrate Judge's recommendation and **GRANTS** Defendants' Motion for Summary Judgment (ECF No. 39).

## I.     FACTUAL AND PROCEDURAL BACKGROUND

The facts of this matter are discussed in the Report and Recommendation. (ECF No. 54 at

2–4.) The court will only reference herein facts viewed in the light most favorable to Plaintiff that are pertinent to the analysis of his claims.

Plaintiff, Daniel Rodriquez, and Leonard Harkins "were part of an out of town contract group working in Aiken and they were all staying at the Howard Johnson[']s on Whiskey Rd." (ECF No. 9-5 at 2; *see also* ECF No. 1-1 at 3 ¶ 5.) On the evening of September 11, 2014, Plaintiff and Rodriquez "went to the bar" and "had a couple [of] drinks." (ECF Nos. 1-1 at 3 ¶ 6, 39-2 at 3:5.) After leaving the bar at approximately midnight, Rodriquez was driving when the car suffered a tire blowout and veered out of control eventually running through a wooden fence. (ECF Nos. 1-1 at 3 ¶ 6, 39-2 at 3:7–14, 5:7–14.) After the accident, Rodriquez abruptly exited the vehicle and ran away from it causing Plaintiff to do the same. (ECF Nos. 1-1 at 3 ¶ 8, 39-2 at 3:16–17.) However, shortly thereafter, they both returned to the vehicle. (ECF No. 39-2 at 3:17–19, 5:16–17.) They were able to drive away as law enforcement approached on foot. (*Id.* at 3:19–21, 6:5–7.)

After circling the block, Rodriquez again exited the vehicle and ran away from it causing Plaintiff to do the same. (*Id.* at 3:21–23, 5:18–24.) Plaintiff eventually stopped running choosing to hide in some bushes for approximately forty-five (45) minutes. (*Id.* at 7:9–14.) While in the bushes, Plaintiff called his wife and Harkins sometime between 1 a.m. and 1:30 a.m. (*Id.* at 7:15–23; *see also* ECF No. 49-7 at 2.)

After receiving Plaintiff's phone call, Harkins dressed himself, got in his truck and drove around the surrounding area searching for Plaintiff. (ECF No. 49-3 at 4:5–9.) When he was unable to find Plaintiff, Harkins drove back to the Howard Johnson's where he was confronted by law enforcement officers looking for Plaintiff, including Cue. (*Id.* at 4:10–25; *see also* ECF No. 49-10 at 2.) Harkins was ordered by the officers to call Plaintiff and tell him that Harkins would drive

to get Plaintiff.  (ECF No. 39-5 at 2.)

Plaintiff left the bushes when he saw Harkins' truck approaching.  (ECF No. 39-2 at 8:7–16.)  In his hands, Plaintiff had his cell phone.  (*Id.* at 11:2–11.)  As Plaintiff running full speed approached Harkins' truck, he saw a law enforcement officer who told Plaintiff to stop.  (ECF No. 49-4 at 8:1–7.)  While Plaintiff attempted to stop (*id.*), Cue discharged his Taser hitting Plaintiff.  (ECF No. 39-3 at 16:3–4.)  Plaintiff "fell to the ground hitting his head on the curb."  (ECF No. 39-4.)  "One metal prong [of the Taser was] in his chest and the other [was] on the right side of his face, above the cheek bone but below the eye."  (*Id.*)  Thereafter, the officers called Emergency Medical Services and "Plaintiff was initially transported to Aiken Regional Medical Center, but was later transferred to a facility in Augusta."  (ECF No. 54 at 4 (citing ECF No. 39-5 at 3).)

On September 8, 2016, Plaintiff filed the instant civil rights action in the Aiken County Court of Common Pleas alleging claims of excessive force, assault, battery, and negligence against Defendants.  (ECF No. 1-1 at 2–6.)  On October 27, 2016, Defendants removed the case to this court.  (ECF No. 1.)  On September 6, 2018, Defendants filed the instant Motion for Summary Judgment against Plaintiff.  (ECF No. 39.)  Plaintiff filed his Memorandum in Opposition to Defendants' Motion for Summary Judgment on December 10, 2018, to which Defendants filed a Reply to Plaintiff's Response on December 28, 2018.  (ECF Nos. 49, 52.)

In accordance with 28 U.S.C. § 636(b)(1) and Local Civil Rule 73.02 D.S.C., the Magistrate Judge issued her Report on March 29, 2019, recommending that the court deny Defendants' Motion for Summary Judgment for the following reasons: (1) Plaintiff presented sufficient evidence to dispute Defendants' assertion that Cue's use of force was objectively reasonable (ECF No. 54 at 7); (2) "qualified immunity does not protect Cue from tasing a compliant subject who had his hands up, even if he had been previously evading police" (*id.* at

10–11); (3) because summary judgment should be denied as to Plaintiff's excessive force claim, it should also be denied as to his assault and battery claim (*id.* at 11); and (4) Defendants' reliance on S.C. Code Ann. § 15-78-60(6) (2019) is misplaced, as courts have interpreted the statutory language to address immunity for the "manner in which a city formulates or implements its policies," and "Plaintiff's claim that Cue's discharge of his taser violated City of Aiken policies does not fall within the immunity provided." (ECF No. 54 at 12 (citation omitted).) On April 12, 2019, Defendants filed the following specific objections to the Magistrate Judge's Report and Recommendation:

(1) The Magistrate Judge erred in her analysis of what is objectively reasonable by focusing on Plaintiff's intentions instead of Officer Cue's perception.

(2) The Magistrate Judge failed to determine objective reasonableness from the totality of the circumstances.

(3) The Magistrate Judge erred in finding Defendant Cue is not entitled to Qualified Immunity.

(ECF No. 56). On May 10, 2019, Plaintiff filed a Reply to Defendants' Objections to the Magistrate Judge's Report and Recommendation (ECF No. 65).

The court considers the merits of Defendants' objections to the Report and Recommendation below.

## II. JURISDICTION

This court has jurisdiction over this matter pursuant to 28 U.S.C. § 1331 based on Plaintiff's claims against Defendants under 42 U.S.C. § 1983, which permits an injured party to bring a civil action against a person who, acting under color of state law, ordinance, regulation, or custom, causes the injured party to be deprived of "any rights, privileges, or immunities secured by the Constitution and laws." *Id.*

## III. STANDARD OF REVIEW

A. <u>Report and Recommendation</u>

The Magistrate Judge's Report and Recommendation is made in accordance with 28 U.S.C. § 636(b)(1) and Local Civil Rule 73.02 for the District of South Carolina. The Magistrate Judge only makes a recommendation to this court. *See Mathews v. Weber*, 423 U.S. 261, 270-71 (1976). The recommendation has no presumptive weight, and the responsibility to make a final determination remains with the court. *Id.* The court reviews *de novo* only those portions of the Report and Recommendation to which specific objections are filed. *See Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310, 315 (4th Cir. 2005). The court reviews those portions which are not specifically objected to only for clear error. *Id.* at 316. The court may accept, reject, or modify, in whole or in part, the Magistrate Judge's recommendation or recommit the matter with instructions. 28 U.S.C. § 636(b)(1).

B. <u>Motion for Summary Judgment</u>

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party bears the initial burden of demonstrating that summary judgment is appropriate; if the movant carries its burden, then the burden shifts to the non-moving party to set forth specific facts showing that there is a genuine issue of material fact for trial. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986).

When considering a motion for summary judgment, the evidence of the non-moving party is to be believed and all justifiable inferences must be drawn in favor of the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). However, "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry

of summary judgment." *Id.* at 248. Further, to show that a genuine issue of material fact exists, the non-moving party must set forth facts beyond "[t]he mere existence of a scintilla of evidence." *Id.* at 252. The non-moving party must present evidence sufficient to demonstrate that a reasonable jury could return a verdict for the non-moving party in order to avoid summary judgment. *See id.* at 248.

## IV. ANALYSIS

A. <u>The Report and Recommendation</u>

In the Report, the Magistrate Judge generally recommends that the court denies Defendants' Motion for Summary Judgment as to all of Plaintiffs' claims. (ECF No. 54 at 13.) In reaching this recommendation, the Magistrate Judge observed that the relevant facts did not support a finding that "Cue's use of force was objectively reasonable," because whatever crime Plaintiff had allegedly committed was minor and "he did not pose a threat to the officers and was no longer evading them" at the time Cue deployed his taser. (*Id.* at 8.) For a similar reason, the Magistrate Judge observed that Cue was not entitled to qualified immunity because it "does not protect Cue from tasing a compliant subject who had his hands up, even if he had previously been evading police." (*Id.* at 10–11.) Finally, as to the remaining state law claims, the Magistrate Judge observed that the assault and battery claims survive based on the viability of the excessive force claim and Defendants' citation to S.C. Code Ann. § 15-78-60(6) (2019) is unavailing in precluding the negligence claim from going forward. (ECF No. 54 at 11–12.)

B. <u>Defendants' Objections to the Report and Recommendation</u>

As their first objection, Defendants assert that the Magistrate Judge erroneously shifted "the established standard used to determine whether force was reasonable or excessive under to [sic] circumstances to look to the Plaintiff's subjective intentions as opposed to what the officer

6

objectively perceived in the moment." (ECF No. 56 at 2 (citing *Graham v. Conner*, 490 U.S. 386, 396 (1989) (the reasonableness of use of force "must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight")).) "Defendants [] assert the correct standard is not whether Plaintiff subjectively intended to comply with Officer Cue's orders 'as quickly as possible,' as Judge Hodges relies, and instead should focus on the information available to Officer Cue immediately prior to the split-second judgment he made to deploy his taser." (*Id.*) Moreover, Defendants assert that "[w]hen looking at the same facts objectively from a reasonable officer's point of view, instead of the subjective perspective of the Plaintiff, it is reasonable to believe the Plaintiff constituted a serious threat to the safety of himself and the other officers on the scene." (*Id.* at 3.) In this regard, Defendants argue that "[t]he record before the court shows that even if Plaintiff was intending to stop 'as quickly as his momentum would allow' and tried to put his hands up; Officer Cue reasonably believed the Plaintiff was non-compliant, was in possession of a weapon, and was pointing it at him when the Plaintiff raised his hands . . . [and] [s]uch a split-second judgment to use force in this situation, looked at from the perception of the officer, would clearly be reasonable under the clearly established law." (*Id.* at 4.)

In their second objection, Defendants argue that the Magistrate Judge applied the incorrect objective reasonableness analysis because she focused on specific segments of events surrounding Plaintiff's tasing "instead of looking at the totality of the circumstances as known to the officer" as required by *Graham*.[1] (ECF No. 56 at 4–5 (citing *Graham*, 490 U.S. at 396).) "Defendants

---

[1] As part of this objection, Defendants contend that the Magistrate Judge erred by focusing "on the extent of the alleged injury sustained by Plaintiff not from the use of force directly, but from the fall following the use of force." (ECF No. 56 at 5 n.4.) However, they admit that "the extent of injury can be considered in determining whether the level of force was excessive," as long as it is not the deciding factor. (*Id.*)

7

assert it would be inappropriate to look at one moment where the Plaintiff alleges he was stopping and putting his hands up without considering the surrounding facts presented to the officer." (*Id.* at 5.)

Finally, in their third objection, Defendants argue that the Magistrate Judge erred in concluding that Cue is not entitled to qualified immunity due to a constitutional right clearly established pursuant to *Estate of Armstrong ex. rel. Armstrong v. Village of Pinehurst* because *Pinehurst* is a January 2016 decision and the relevant events in this matter occurred "between the late night hours of September 11, 2014 and the early morning of September 12, 2014." (*Id.* at 6 (referencing *Pinehurst*, 810 F.3d 892, 905 (4th Cir. 2016)).) "Therefore, [] Defendants assert no clearly established constitutional right was violated when Officer Cue deployed his taser at an individual who had previously been evading police and whom he reasonably believed to present an immediate and serious risk of harm; and assert the Magistrate Judge erred in relying on precedent established after this incident in finding to the contrary." (*Id.* at 9–10.) Thus, they argue that "[i]t would be entirely inappropriate to hold Officer Cue to a standard developed sixteen months after this incident, when the Fourth Circuit explicitly used the *Pinehurst* opinion to put police officers 'on notice' and clarify appropriate taser use." (ECF No. 56 at 10.)

C. The Court's Review

   *1. Excessive Force Claim*

In this matter, Plaintiff asserts that he was subjected to excessive force when he was tasered pre-arrest in violation of 42 U.S.C. § 1983. (ECF No. 1-1 at 6 ¶ 21.) Defendants object to the Magistrate Judge's recommendation to deny their Motion for Summary Judgment as to the excessive force claim asserting that she erroneously failed to "view the facts objectively from the perspective of a reasonable officer on the scene, and [] instead viewed the circumstances with the

8

20/20 vision of hindsight contrary to the Supreme Court's directive in *Graham*." (ECF No. 56 at 4.)

"Title 42 U.S.C. § 1983 is a federal statutory remedy available to those deprived of rights secured to them by the Constitution and, in a more sharply limited way, the statutory laws of the United States." *Philips v. Pitt Cty. Mem'l Hosp.*, 572 F.3d 176, 180 (4th Cir. 2009). "One alleging a violation of section 1983 must prove that the charged state actor (1) deprived plaintiff of a right secured by the Constitution and laws of the United States, and (2) that the deprivation was performed under color of the referenced sources of state law found in the statute." *Id.* (citing *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 150 (1970); *Mentavlos v. Anderson*, 249 F.3d 301, 310 (4th Cir. 2001)). "[A]nalysis of an excessive force claim brought under § 1983 begins with 'identifying the specific constitutional right allegedly infringed by the challenged application of force.'" *Sawyer v. Asbury*, 537 F. App'x 283, 290 (4th Cir. 2013) (quoting *Orem v. Rephann*, 523 F.3d 442, 445 (4th Cir. 2008)).

"[C]laims for the use of excessive force in effectuating an arrest or other seizure are governed by the Fourth Amendment's prohibition against 'unreasonable' seizures; . . . ." *Id.* (citing *Graham*, 490 U.S. at 395 & n.10). "Whether an officer has used excessive force is analyzed under a standard of objective reasonableness." *Henry v. Purnell*, 652 F.3d 524, 531 (4th Cir. 2011) (citing *Scott v. Harris*, 550 U.S. 372, 381 (2007); *Kentucky v. King*, 563 U.S. 452, 464 (2011) ("Our [Fourth Amendment] cases have repeatedly rejected a subjective approach, asking only whether the circumstances, viewed objectively, justify the action." (internal quotation marks and citations omitted))). "Thus, courts determine 'whether the officers' actions are 'objectively reasonable' in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation." *Id.* (quoting *Graham*, 490 U.S. at 397). "In considering whether

an officer used reasonable force, a court must focus on the moment that the force is employed." *Id.* (citing *Elliott v. Leavitt*, 99 F.3d 640, 643 (4th Cir. 1996)).

"An officer may employ force, when such force is reasonable under the circumstances, in the course of his or her duty." *Moody v. City of Newport News, Va.*, 193 F. Supp. 3d 530, 543 (E.D. Va. 2016). "Further, a reasonable officer may use deadly force '[w]here the officer has probable cause to believe that [a] suspect poses a threat of serious physical harm, either to the officer or to others.'" *Id.* (quoting *Tennessee v. Garner*, 471 U.S. 1, 11 (1985)).

"In determining whether force is reasonable, courts are required to carefully balance 'the nature and quality of the intrusion on the individual's Fourth Amendment interests' against the countervailing governmental interests at stake.'" *Id.* (quoting *Graham*, 490 U.S. at 396). "[P]roper application [of the balancing test for reasonableness] requires careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Graham*, 490 U.S. at 396 (citing *Garner*, 471 U.S. at 8–9). "The extent of the plaintiff's injury is also a relevant consideration." *Jones v. Buchanan*, 325 F.3d 520, 527 (4th Cir. 2003) (citations omitted). "The 'reasonableness' of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Graham*, 490 U.S. at 396 (citing *Terry v. Ohio*, 392 U.S. 1, 20–22 (1968)).

In the Report, the Magistrate Judge expressly recognized the importance of *Graham* and its progeny to the analysis of whether Cue's actions were objectively reasonable. (*See* ECF No. 54 at 6–7.) However, Defendants argue that the Magistrate Judge erred in reaching her ultimate recommendation due to an observation that "at the time of the taser's discharge, he [Plaintiff] did

not pose a threat to the officers and was no longer evading them" because Plaintiff "testified that when Cue ordered him to stop, he stopped as quickly as his momentum allowed and put his hands up." (*Id.* at 7–8.)

Upon its review, the court agrees with Defendants that Plaintiff's subjective beliefs about his own actions do not dictate the outcome of the evaluation of his excessive force claim. In this regard, the evidence before the court viewed in the light most favorable to Plaintiff indicates that a reasonable officer was knowledgeable of the following facts and circumstances before Cue utilized his Taser on Plaintiff:

(1) Plaintiff was one of two male individuals involved in a hit-and-run accident in the early morning hours of September 12, 2014. (ECF No. 39-3 at 3:14–18, 4:4–11, 7:22–25; *see also* ECF Nos. 39-4, 39-5.) Both individuals had fled from the scene of the accident and from law enforcement. (*Id.*)

(2) Plaintiff was actively evading police in the Hopeland Gardens area. (ECF No. 39-3 at 7:22–8:16, 10:6–8.)

(3) Cue had performed a traffic stop on Harkins and persuaded Harkins to help locate Plaintiff. (*Id.* at 11:3–12, 20–21; *see also* ECF Nos. 39-5, 49-5 at 7:19–24, 8:25–9:7.) The officers would confront Plaintiff upon his appearance. (ECF Nos. 39-3 at 11:21–23, 39-5.)

(4) Plaintiff was in possession of a cell phone because that is how he was able to communicate with Harkins. (ECF No. 39-3 at 17:17–22.)

(5) While sitting in his/her vehicle, the reasonable officer would have received a call alerting him/her that Plaintiff was running. (ECF No. 39-4.)

(6) Plaintiff would have appeared in front of the reasonable officer out of nowhere running toward Harkins' truck. (ECF No. 39-3 at 12:12–15, 14:12.)

(7) The reasonable officer would have exited his/her vehicle, pulled out a weapon, given specified directions to Plaintiff.[2] (*Id.* at 13:25–14:14.)

(8) The reasonable officer would have been confronting Plaintiff in an area that was not well-lit. (*Id.* at 12:17–19.)

(9) Once Plaintiff stopped, and turned toward the reasonable officer with "a black object in his hand" in "a squared shooting stance manner" (*id.* at 15:1–5, 17–

---

[2] Cue pulled out his Taser. Officer PSO Pelaez drew his gun. (ECF No. 39-4.)

23), the reasonable officer would be tasked with quickly making a decision regarding what was the black object.

At the outset, the court observes that "the use of tasers is at least an intermediate, if nonlethal, level of force." *Bryan v. MacPherson*, 630 F.3d 805, 810–11 (9th Cir. 2010) (listing numerous circuit opinions in agreement). However, "the use of tasers or other [such] weapons does not violate the Fourth Amendment per se." *Davis v. Richland County*, Civil Action No. 4:12-cv-3429-RMG-TER, 2014 WL 3805798, at *5 (D.S.C. July 2, 2014) (quoting *Fils v. City of Aventura*, 647 F.3d 1272, 1276 n.2 (11th Cir. 2011)). "[T]he issue is whether the amount of force used was excessive under the circumstances." *Id.* (citing *Riley v. Dorton*, 115 F.3d 1159, 1161 (4th Cir. 1997)). Accordingly, the court turns to the *Graham* factors to make this assessment.

As to the first *Graham* factor, the court observes that it favors Plaintiff because the hit and run he was involved in appears to only be a misdemeanor by virtue of there not being any evidence in the record that the act resulted in injury to a person. *See* S.C. Code Ann. §§ 56-5-1250, -6190 (2019). Moreover, Plaintiff alleges he suffered severe head injury when he fell to the ground and hit his head on the curb. (*See* ECF No. 49-9.)

However, the remaining two (2) *Graham* factors clearly weigh in Cue's favor because at the moment he administered the Taser, Plaintiff was actively evading law enforcement after commission of crime at night, was advancing toward Cue at a high rate of speed, was not immediately responding to his directions, and was possessing an unidentified object in his hand. Based on these circumstances, the court finds that Plaintiff's actions created a moderately serious situation over which a reasonable officer would have employed force similar to Cue to counter a perceived threat to his/her safety.[3] To conclude that the force used by Cue was unreasonable, the

---

[3] Although none of the parties provided the specific pages of the deposition transcript, Defendants cited to the following testimony from Plaintiff's expert where he admits that the circumstances presented by Plaintiff could have created a threatening situation for Cue:

12

court would have to ignore the totality of events and judge Cue's use of intermediate force as unconstitutional based on his failure to recognize in a split-second that the dark object Plaintiff was holding was a cell phone. *See Graham*, 490 U.S. at 396-97 ("The calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a particular situation."); *Bryan v. MacPherson*, 630 F.3d 805, 826 (9th Cir. 2010) ("The 'most important' factor under *Graham* is whether the suspect posed an 'immediate threat to the safety of the officers or others.' 'A simple statement by an officer that he fears for his safety or the safety [of] others is not enough; there must be objective factors to justify such a concern.'") (internal and external citations omitted).

Therefore, upon consideration of the foregoing facts in the context of the *Graham* factors, the court finds that Cue's one-time deployment of his Taser against Plaintiff did not amount to an unreasonable or excessive use of force. *See Draper v. Reynolds*, 369 F.3d 1270, 1278 (11th Cir. 2004) (observing that "a single use of the taser gun causing a one-time shocking—was reasonably

---

| | |
|---|---|
| Q. | And then B is "violent, threatening, or potentially violent behavior." Did I read that correctly? |
| A. | Yes, sir. |
| Q. | Would -- would -- if I'm -- if I'm encountering a police officer and I have dark object in my hand at night and I take a shooter's stance at the officer, would -- would you agree with me that that's a threatening stance? |
| A. | It could be, yes. |
| Q. | And that would be threatening behavior? |
| A. | It could be. Yes, sir. |
| Q. | Okay. And that is the testimony that Officer Cue was given about what he perceived from this situation, correct, is that Dustin pointed a dark object at him in a shooter's stance? |
| A. | Yes. That's what he said in his deposition. |

Deposition of Roy G. Taylor, Page 136, lines 6–21.

proportionate to the need for force" and "may well have prevented a physical struggle and serious harm to either" the officer or the Taser recipient). Accordingly, the court concludes that Cue's use of the Taser was objectively reasonable and did not violate Plaintiff's Fourth Amendment rights.[4] *Mayes v. Swift*, C/A No. 6:10-2991-TMC, 2012 WL 463528, at *2 (D.S.C. Feb. 13, 2012) ("In analyzing an excessive force claim at the summary judgment stage, once a court has determined which facts are relevant and drawn all inferences from those facts in the favor of the nonmoving party, the reasonableness of a law enforcement officer's actions is a pure question of law to be decided by the court." (citing *Scott v. Harris*, 550 U.S. 372, 381 n.8 (2007))). Defendants' objections to the Report and Recommendation are sustained.

   2. *Supplemental Jurisdiction as to the Remaining State Law Claims*[5]

The court observes that Defendants removed this action based on federal question jurisdiction pursuant to 28 U.S.C. § 1331. (*See* ECF No. 1 at 1–2 ¶ 3.) Normally, because it granted summary judgment on the Fourth Amendment excessive force claim, the only claim over which it has original jurisdiction, the court would need to consider whether to exercise supplemental jurisdiction over the remaining state law claims for battery, assault, and negligence. However, the court observes that the Complaint sufficiently establishes the existence of diversity jurisdiction because the allegations support a finding of complete diversity and the amount in

---

[4] Since Cue did not violate Plaintiff's constitutional rights, he is also presumed to be entitled to qualified immunity. Public officials performing discretionary functions are entitled to qualified immunity from liability for civil damages to the extent "their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald,* 457 U.S. 800, 818 (1982). Specifically, qualified immunity for a public official is appropriate when no constitutional right has been violated. *Saucier v. Katz*, 533 U.S. 194, 201 (2001).
[5] Because she recommended that summary judgment be denied as to Plaintiff's Fourth Amendment claim, the Magistrate Judge did not have to undertake a supplemental jurisdiction analysis.

controversy appears to exceed $75,000.00, exclusive of interest and costs.[6]

3. *Battery*[7]

Plaintiff contends that the City of Aiken is vicariously liable for battery as a result of "[t]he acts and omissions of Officer Cue in shooting [] [Plaintiff] with a [T]aser without his consent." (ECF No. 1-1 at 5 ¶ 18.) However, because the court has concluded that Cue's one-time use of his Taser on Plaintiff was reasonable, "no claim for battery can lie." *Yarborough v. Montgomery*, 554 F. Supp. 2d 611, 620 (D.S.C. 2008) (citing *Roberts v. City of Forest Acres*, 902 F. Supp. 662, 671–72 (D.S.C. 1995)). Accordingly, Defendants are entitled to summary judgment as to Plaintiff's claim for battery.

4. *Assault*[8]

Plaintiff asserts that the City of Aiken is vicariously liable for assault because "[t]he acts

---

[6] For jurisdictional purposes, Plaintiff alleged that he is "a citizen and resident of Florida," City of Aiken "is a municipality organized under the laws of the State of South Carolina," and Cue is an official employed by "the Aiken [South Carolina] Department of Public Safety." (ECF No. 1-1 at 2 ¶ 1–3 ¶ 3.) The court is satisfied that the amount in controversy exceeds $75,000.00, exclusive of interest and costs, because Plaintiff is suing to recover compensatory damages, punitive damages, and attorney's fees. (*Id.* at 6); *see also Mattison v. Wal-mart Stores, Inc.*, C/A No. 6:10-cv-017939-JMC, 2011 WL 494395, at *3 (D.S.C. Feb. 4, 2011) (holding that even though Plaintiff's complaint does not specify the exact amount of damages that Plaintiff is claiming, Plaintiff's request for punitive damages alone, which are properly considered for purposes of determining the amount in controversy makes it difficult for Plaintiff to prove she could not possibly recover the jurisdictional limit were Plaintiff to prevail at trial (citing *Woodward v. Newcourt Comm. Fin. Corp.*, 60 F. Supp. 2d 530, 532 (D.S.C. 1999) (holding that Plaintiff's claim for punitive damages alone makes it virtually impossible to say that the claim is for less than the jurisdictional amount))).

[7] "[A] battery is the actual infliction of any unlawful, unauthorized violence on the person of another, irrespective of its degree." *Jones by Robinson v. Winn–Dixie Greenville, Inc.*, 456 S.E.2d 429, 432 (S.C. Ct. App. 1995) (quoting *Gathers v. Harris Teeter Supermarket, Inc.*, 317 S.E.2d 748, 754 (S.C. Ct. App. 1984)).

[8] "[A]n assault occurs when a person has been placed in reasonable fear of bodily harm by the conduct of the defendant." *Jones by Robinson v. Winn–Dixie Greenville, Inc.*, 456 S.E.2d 429, 432 (S.C. Ct. App. 1995) (quoting *Gathers v. Harris Teeter Supermarket, Inc.*, 317 S.E.2d 748, 754–55 (S.C. Ct. App. 1984)).

and omissions of Officer Cue placed [] [Plaintiff] in imminent fear of an unlawful touching by intentionally shooting [] [Plaintiff] with a [T]aser . . . ." (ECF No. 1-1 at 5 ¶ 19.) However, "[a] police officer who uses reasonable force in effectuating a lawful arrest is not liable for assault." *Roberts*, 902 F. Supp. at 671–72. Therefore, because the court has concluded that Cue's use of his Taser on Plaintiff was reasonable, Plaintiff cannot state a claim for assault and Defendants are entitled to summary judgment.

   5. *Negligence*[9]

Plaintiff alleges that the City of Aiken is vicariously liable for negligence based on the following particulars:

> Officer Cue had a duty to use force, and specifically a taser, in a reasonable manner and in accordance with proper police training on the use of a taser. The discharge of a taser on an individual who is in an elevated position and near a curb is prohibited because of the potential for serious injury once the suspect's ability to protect his body from a fall has been compromised. Officer Cue breached this duty by discharging his taser, knowing that Mr. Patrick was in a vulnerable position. As a direct and proximate result of the breach of his duty to use reasonable force, Mr. Patrick suffered severe spinal injuries.

(ECF No. 1-1 at 5–6 ¶ 20.) In his Memorandum in Opposition to Defendants' Motion for Summary Judgment, Plaintiff further argues that Cue had "a duty not to use unreasonable force." (ECF No. 49 at 24.)

Upon its review, the court observes that like the other state law claims, the conclusion that Cue's one-time use of his Taser on Plaintiff was reasonable effectively negates his claim for negligence. Moreover, while the Aiken Department of Public Safety's Policies and Procedures regarding the use of "Electronic Control Weapons" have been entered in the record (*see* ECF No.

---

[9] "A plaintiff prosecuting a negligence claim must demonstrate (1) the defendants owed her a duty of care; (2) the defendants breached that duty by a negligent act or omission; and (3) she suffered damage as a proximate result of that breach." *Nelson v. Piggly Wiggly Cent., Inc.*, 701 S.E.2d 776, 780 (S.C. Ct. App. 2010) (citing *Bloom v. Ravoira*, 529 S.E.2d 710, 712 (S.C. 2000)).

49-11), Plaintiff fails to articulate any manner in which these policies are improper or inadequate other than in the aforementioned paragraph from his Complaint. *See Arthur v. United Nat'l Bank*, 914 F.2d 1490 (4th Cir. 1990) ("To survive summary judgment, a nonmoving party cannot 'rest on his allegations . . . without 'any significant probative evidence tending to support the complaint.''" (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986)). Accordingly, Defendants are entitled to summary judgment on Plaintiff's claim for negligence.

## V. CONCLUSION

Upon careful consideration of the entire record, the court hereby **SUSTAINS** the Objections of Defendants City of Aiken and William R. Cue and **GRANTS** their Motion for Summary Judgment (ECF No. 39).

As a result, the court **REJECTS** the Magistrate Judge's Report and Recommendation (ECF No. 54).

**IT IS SO ORDERED.**

*/s/ J. Michelle Childs*
United States District Judge

September 27, 2019
Columbia, South Carolina

17